IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 20, 2008

## STATE OF TENNESSEE v. JOHN WILLIS WEBB

**Appeal from the Circuit Court for Rutherford County
No. M-59410      Royce Taylor, Judge**

_____

**No. M2007-02551-CCA-R3-CD - Filed December 16, 2008**

_____

The defendant, John Willis Webb, was convicted by a jury in the Circuit Court for Rutherford County for driving on a revoked license, a Class B misdemeanor. He was sentenced to six months in the county workhouse, the suspension of his driving privileges for one year, and a fine of $200. On appeal, he claims the evidence was insufficient to convict him of driving on a revoked license. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Gerald L. Melton, District Public Defender, and Jeffrey S. Burton, Assistant Public Defender, for the appellant, John Willis Webb.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Thomas Earl Parkerson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Officer Rafael Bello of the Smyrna Police Department testified at trial that on August 19, 2006, he received a dispatch about a white male driving a gray, four-door, early 1990's model Cadillac. Officer Bello said that he saw a car corresponding to this description and that a white male was driving it. He stated that he was in the median of Almaville Road in Rutherford County looking for this car and that he saw the car driving down the interstate exit ramp. He said the car turned right from the exit ramp of Interstate 24 onto Almaville Road after stopping at the traffic light. He said that he continued to observe the car and that it turned left into a McDonald's parking lot. The officer said he did not turn on his blue lights because the car had already parked. He said that the defendant got out of the car, that he asked the defendant if the defendant had been the driver of the gray Cadillac, and that the defendant answered affirmatively. Officer Bello said that he asked the

defendant to provide identification, but that the defendant stated he did not have any identification with him. Officer Bello said he asked for the defendant's name and date of birth to run a records check, the result of which showed that the defendant's driver's license had been revoked. Officer Bello testified that the certified copy of the defendant's official driving record reflected that the defendant's driver's license had been revoked after the defendant had failed to report an accident. Officer Bello stated that the notice of the revocation had been sent on March 17, 2003. Officer Bello said he arrested the defendant for driving on a revoked license and cited him for two other motor vehicle violations.

On cross-examination, Officer Bello explained that he was approximately 150 yards away from the defendant's car when he saw the gray Cadillac turn right onto Almaville Road. Officer Bello said he could see at this distance that a white male was driving this gray Cadillac. He stated that he continued to observe the defendant drive the car uphill into the McDonald's parking lot and that he was able to catch up with the defendant's car because the two traffic lights between them had been green lights. Officer Bello said that he was in the turn lane when he saw the defendant turn in front of him into the parking lot. He said that he saw the defendant get out of the car and that the defendant mixed into a group of people entering McDonald's. Officer Bello said he walked up to the defendant and asked him for this reason whether he had been driving the gray Cadillac and that the defendant answered affirmatively. He said that he had had the license plate verified, that the defendant did not own the car, and that the defendant had told him he either bought or borrowed the car from a woman. He stated that he asked the defendant for the car keys and that the defendant gave him keys. The officer admitted that he did not remember the disposition of the two citations he issued to the defendant. He did, however, remember parking two spaces to the right of the defendant's car. He also stated that he was "absolutely positive" that he saw the defendant drive the car.

The defendant testified that although he was in the 1992 gray, four-door Cadillac on August 19, 2006, he was not its driver. He said that a woman who worked for him, Kim Thompson, was the owner and driver of the car. He stated that she was driving him to a house he was selling off Interstate 24 and that they stopped at the McDonald's on Almaville Road around 5 p.m. He said the exit ramp ran downhill for approximately one-eighth of one mile and that they turned off the ramp without coming to a complete stop because the traffic light was green. He said that if the officer had been sitting at the bottom of the exit ramp, he would not have been able to see the traffic light on the other side of the interstate because the two overpasses "shade" the view and the officer would have been looking into the setting sun. He said that Ms. Thompson drove the car uphill to the McDonald's. The defendant said that he and Ms. Thompson used the driver's-side door to get out of the car there, as the passenger door did not function. He explained that they both went into the McDonald's and that he was looking for an electrical outlet to recharge his cell phone. He said that because he could not find one, he returned to the car and tossed the charger onto the seat. He said that as he was walking back toward the McDonald's, Officer Bello approached him and asked if he had just "got out of that gray Cadillac." He also said Officer Bello asked him if he knew he had an arrest warrant. The defendant said that he answered negatively and that when asked for identification, he told the officer he did not have any. The defendant testified that in response to the

officer's request for the keys to the car, he handed him keys. The defendant testified, however, that he did not have keys to Ms. Thompson's car and that the keys he handed to the officer did not open the car's trunk.

On cross-examination, the defendant acknowledged that he did not have either a driver's license or car registration that day. In response to questioning about why he did not have the driver of the car talk to the officer to resolve the issue quickly, he stated that Ms. Thompson started to come outside but that he rebuffed her by shaking his head. He said she did not come outside. He said that he did not want to involve her because the arrest warrant had nothing to do with the car.

On redirect examination, the defendant testified that Officer Bello told him he was arresting him on the outstanding arrest warrant and not because of his driver's license suspension. He said he first learned he had been arrested for driving on a revoked license was at his arraignment.

The defendant argues on appeal that the evidence presented at trial was insufficient for a jury to find beyond a reasonable doubt that he drove a motor vehicle after his license had been revoked. He claims that because the arresting officer had no "independent recollection" of the events giving rise to the proceedings other than his claim that he saw the defendant driving that day, the evidence preponderates against the verdict and that the conviction should be reversed. See Anderson v. State, 341 S.W.2d 385 (Tenn. 1960); T.R.A.P. 13(e).

The State responds that the conviction was proper and should be affirmed. The State argues that the defendant has not met his burden to show the insufficiency of the evidence pursuant to State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). The State characterizes the defendant's argument as a request for this court to make credibility determinations of the trial witnesses.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The defendant was convicted under Tennessee Code Annotated section 55-50-504(a)(1) (2002), which states:

> A person who drives a motor vehicle within the entire width between
> the boundary lines of every way publicly maintained which is open to
> the use of the public for purposes of vehicular travel . . . or any other
> premises frequented by the public at large at a time when the person's

privilege to do so is cancelled, suspended, or revoked commits a
Class B misdemeanor.

Officer Bello testified that he had received a dispatch on August 19, 2006, alerting him to a white male driving a gray, four-door, 1990's model Cadillac nearby. He testified that he watched the defendant, a white male in a gray, four-door Cadillac fitting the dispatch description, drive off the exit ramp of Interstate 24, onto Almaville Road, and into a McDonald's parking lot. The officer testified that he saw the defendant get out of the car. He testified that the defendant said he was the driver of the car. The officer also testified that the defendant's driver's license had been revoked and that the defendant did not provide him with a valid driver's license. The officer also testified that the defendant was the man he observed on August 19, 2006. Additionally, the defendant did not present any proof to corroborate his claim that he was not the driver at the time Officer Bello observed him. We conclude the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that the defendant drove a motor vehicle when his driving privilege had been revoked.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE